341 F.3d 906
 CALIFORNIA DEPARTMENT OF WATER RESOURCES, Petitioner,
Southern California Edison Company, Intervenor-Petitioner,
Public Utilities Commission of the State of California; Pacificorp, Intervenors-Respondents,
Southern California Edison Company, Intervenor,
Dynegy Power Marketing, Inc., Intervenor-Respondent,
El Segundo Power LLC; Long Beach Generation LLC; Cabrillo Power I LLC; Cabrillo Power II LLC.; South Coast Air Quality Maintenance District, Intervenors,
Idacorp Energy L.P., Intervenor-Petitioner,
Coral Power L.L.C.; Constellation Power Source, Inc., Intervenors-Respondents,
Public Service Company of Colorado; Pinnacle West Capital Corporation; Arizona Public Service Company, Intervenors,
Mirant Americas Energy Marketing, L.P.; Mirant California L.L.C.; Mirant Delta, L.L.C.; Mirant Portrero L.L.C., Intervenors-Respondents,
Puget Sound Energy, Inc., Intervenor,
Northern California Power Agency; Transmission Agency of Northern California; The M-S-R Public Power Company, Intervenors-Respondents,
The Modesto Irrigation District, Intervenor-Petitioner,
The City of Palo Alto, California; The City of Redding, California, Intervenors-Respondents,
The City of Santa Clara, California, Intervenor-Petitioner,
California Independent System Operator Corporation; Morgan Stanley Capital Group, Inc., Intervenors-Respondents,
Williams Energy Marketing & Trading Company, Intervenor,
Merrill Lynch Capital Services, Inc., Intervenor-Respondent,
Portland General Electric Company; California Electricity Oversight Board, Intervenors,
El Paso Merchant Energy, L.P., Intervenor-Respondent,
The Port of Seattle, Washington, Intervenor,
Duke Energy North America LLC; Duke Energy Trading And Marketing, LLC, Intervenors-Respondents,
The City of Los Angeles Department of Water And Power, Intervenor-Petitioner,
Sempra Energy Trading Corporation; Avista Energy, Inc.; City of Tacoma, Washington, Intervenors,
Port of Seattle; City of Tacoma; Pacific Gas and Electric Company; Enron Power Marketing Inc., Intervenors-Respondents,
Puget Sound Energy; California Independent System Operator Corporation, Intervenors,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent.
 No. 01-71405.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 9, 2003 — San Francisco, California.
 Filed August 27, 2003.
 
 Edna Walz, Deputy Attorney General, Sacramento, California, and Peter C. Kissel, Washington, D.C., for the petitioner.
 Robert H. Solomon, Deputy Solicitor, Federal Energy Commission, Washington, D.C., for the respondent.
 Michael E. Ward, Swidler, Berlin, Shereff, Friedman, LLP, and Sean M. Neal, Duncan, Weinberg, Genzer & Pembroke, P.C., Washington, D.C., for the intervenors.
 On Petition for Review of an Order of the Federal Energy Regulatory Commission.
 Before: MARY M. SCHROEDER, Chief Judge, DOROTHY W. NELSON and WILLIAM A. FLETCHER, Circuit Judges.
 OPINION
 SCHROEDER, Chief Judge.
 
 
 1
 The California Department of Water Resources ("DWR") is a state agency charged with managing California's water supply. As a by-product of its operation of dams and reservoirs, it generates electricity that is subject to federal regulation. The Federal Energy Regulatory Commission ("FERC") is a federal agency charged with regulating interstate energy markets, and as a by-product of that regulation, finds itself involved in regulating California's water supply. The intersection of the agencies' respective authority is the source of this dispute. DWR challenges a FERC order that granted authority to control DWR's power outages to the California Independent System Operator ("the ISO"), the public corporation that operates California's energy grid.
 
 
 2
 Specifically, DWR petitions for review under Section 313(b) of the Federal Power Act, 16 U.S.C. § 825l(b), of a FERC order denying reconsideration of an earlier FERC order granting the ISO control over the planned power outages of DWR's generation units. DWR contended before FERC that the ISO's enhanced authority would interfere with DWR's primary responsibility to store and deliver water. In the orders under review, FERC did not address DWR's position and failed to explain the rationale behind giving the ISO the authority to control DWR's power outages. We vacate those portions of the orders that grant the ISO authority to control DWR's power outages. We remand to FERC to address DWR's concerns.
 
 BACKGROUND AND PROCEDURAL HISTORY
 
 3
 The petitioner in this case, DWR, is a state agency responsible for the control and management of much of California's water supply. DWR operates the State Water Project, a storage and delivery system of reservoirs, aqueducts, pumping plants, and hydroelectric and geothermal power plants. DWR operates the water system so that its electricity consumption and generation are complementary, consuming electricity to pump water during off-peak hours to allow water delivery and electricity generation during periods of peak electricity demand. DWR consumes much of the electricity it generates. It sells its surplus electricity on the ISO's wholesale markets to the extent that its water-management responsibilities permit.
 
 
 4
 The ISO, an intervenor in this case, is a nonprofit public benefit corporation responsible for the operation of California's energy grid and wholesale energy markets. Those markets are governed by the ISO Tariff, which requires that all generators enter into Participating Generator Agreements ("PGAs") that bind generators to the terms of the Tariff. DWR operates six hydroelectric generation units and one geothermal unit under PGAs with the ISO.
 
 
 5
 The two orders at issue in this petition for review arise from a FERC proceeding initiated on August 23, 2000, to address problems in the California wholesale energy market. See San Diego Gas & Elec. Co. v. Sellers of Energy & Ancillary Servs., et al., 92 FERC ¶ 61,172 (Aug. 23, 2000). In the relevant portion of the first order on review, 95 FERC ¶ 61,115 (April 26, 2001), FERC ordered the ISO to amend its Tariff to require participating generators, including DWR, to submit to enhanced ISO control over planned outages of generation units. Id. at 61,355. Under the prior Tariff, the ISO's control over planned outages was limited to a subset of generators and to cases of actual or imminent system emergency. In contrast, the amended Tariff requires every generator to submit, for ISO approval, a schedule proposing all planned outages for the upcoming year. The April 26 order also directed the ISO to implement a mechanism requiring participating generators to sell all of their available electricity into California's real-time energy markets, an obligation known as the "must-offer" requirement. Id. at 61,355-56. While FERC subjected all generators to ISO outage control, FERC gave DWR an exemption from the must-offer requirement on the ground that it would unduly interfere with DWR's primary water-management responsibilities. Id. at 61,357. DWR contends that FERC should have granted it a similar exemption from the outage control requirement.
 
 
 6
 DWR presented this contention to FERC when it petitioned FERC for rehearing of the April 26 order. The rehearing petition challenged the ISO's enhanced authority to control DWR's planned outages. In the second order on review, 95 FERC ¶ 61,418 (June 19, 2001), FERC denied DWR's request for rehearing and reaffirmed that DWR's hydroelectric units would be subject to ISO outage control. Id. at 62,550-51. The June 19 order did not alter DWR's exemption from the must-offer requirements. Id. at 62,551.
 
 
 7
 As required for review under Section 313(b) of the Federal Power Act, 16 U.S.C. § 825l(b), DWR filed a petition for review in this court within sixty days of FERC's June 19, 2001, denial of its request for rehearing.
 
 FINALITY OF THE ORDERS FOR PURPOSES OF REVIEW
 
 8
 FERC orders are judicially reviewable pursuant to 16 U.S.C. § 825l(b), but we have held that such review is limited to final orders to ensure there will be no interference with the administrative process. The Steamboaters v. FERC, 759 F.2d 1382, 1387-88 (9th Cir.1985). FERC contends the June 19 order is not sufficiently final to enable us to review the issue of outage control because DWR has since petitioned for rehearing on other, unrelated issues, which were addressed for the first time in that order.
 
 
 9
 In assessing administrative finality for purposes of judicial review, we look to whether the order amounts to a definitive statement of the agency's position, whether the order has a direct and immediate effect on the day-to-day operations of the party seeking review, and whether immediate compliance is expected. See Mt. Adams Veneer Co. v. United States, 896 F.2d 339, 343 (9th Cir.1990) (citing FTC v. Standard Oil Co., 449 U.S. 232, 239-40, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980)). The June 19 order meets these standards of finality with respect to outage control because it disposed of all issues then pending before FERC on that subject. We therefore have jurisdiction to review the orders in question.
 
 DISCUSSION
 
 10
 Our review of a FERC decision is limited to whether the decision was arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, or not in accordance with the law. 5 U.S.C. § 706(2)(A); The Steamboaters, 759 F.2d at 1388. As long as the record reflects that the decision was "based on a consideration of relevant factors and there was no clear error of judgment" the decision was not arbitrary or capricious. See Ariz. Cattle Growers' Ass'n v. U.S. Fish & Wildlife, 273 F.3d 1229, 1236 (9th Cir.2001).
 
 
 11
 The question we address is whether FERC adequately responded to DWR's position that the ISO should not control DWR outages in the same way that it controls the outages of private companies. FERC's orders subject DWR's generating units to the same outage control obligations that the ISO imposes on private companies selling power on the wholesale markets. These private companies, known as merchant generators, differ from a dedicated-purpose generator like DWR, a state agency whose primary mission is to store and deliver water throughout California. Creation of electrical power is essentially a by-product of DWR's storage and distribution of water. The merchant generators, in contrast, are commercial enterprises whose primary, often exclusive, function is to generate and distribute electricity.
 
 
 12
 The two classes of generators therefore differ in significant ways. Whether these differences are material for purposes of outage control is a question FERC has not answered directly, and the answer is not apparent in the record. Indeed, FERC recognized the differences when it granted DWR an exemption from the must-offer requirements, explaining in its April 26 order that DWR's hydroelectric facilities were materially different from the generation units of merchant generators:
 
 
 13
 Under the must-offer obligation, no generator will be required to run in violation of its certificate or applicable law. The Commission, however, recognizes the difficulty in applying the must-offer requirement to hydroelectric power, because of its multi-purpose limitations (e.g., irrigation, recreation[ ], and power production), and therefore will exempt them from the must-offer obligation.
 
 
 14
 95 FERC at 61,357. FERC has furnished no similar explanation for denying DWR an exemption from the outage control obligations.
 
 
 15
 It therefore does not appear on this record that FERC has considered all of the relevant factors in reaching its decision. The record on the question of outage control is in marked contrast to the record on the related question of the must-offer requirements, where the Commission ultimately accepted DWR's position and granted it an exemption. We therefore cannot hold that the April 26 and June 19 orders meet the requirements of reasoned decisionmaking with respect to outage control.
 
 
 16
 DWR additionally suggests that FERC lacked jurisdiction under Section 201(f) of the Federal Power Act, 16 U.S.C. § 824(f), to subject DWR to ISO's outage control authority. This issue of statutory interpretation was not adequately raised before FERC prior to raising it here. Section 313(a) of the Federal Power Act, 16 U.S.C. § 825l(a), requires as a prerequisite to our review that an issue be presented first to FERC. Where an argument is not adequately presented to FERC for FERC to decide it, review in our court is not appropriate. See Intermountain Mun. Gas Agency v. FERC, 326 F.3d 1281, 1286 n. 7 (D.C.Cir.2003) (holding that where a petitioner failed to first raise an argument before FERC, the court lacked jurisdiction to consider it as part of the petition for review); Cal. Dep't of Water v. FERC, 306 F.3d 1121, 1126 (D.C.Cir.2002) (finding that a footnote toward end of a brief arguing that FERC lacked jurisdiction over state agencies was insufficient to preserve the issue for judicial review). Here, DWR raised the issue in a single sentence at the end of an unrelated section of its request for rehearing, without citing the statutory language it now urges us to consider. DWR thus failed to preserve the issue for our review.
 
 
 17
 We vacate FERC's orders of April 26, 2001, and June 19, 2001, insofar as they pertain to outage control of DWR generation units. We remand for consideration of the matter properly raised by DWR's petition for review.
 
 
 18
 Petition for review GRANTED IN PART, DENIED IN PART, AND REMANDED.